UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**ENOC ISAAC MARQUEZ-AMAYA,**

    *Petitioner*,

v.                                                         Case No. 5:25-CV-1501-JKP

**BOBBY THOMPSON, Warden,**
**South Texas ICE Processing Center, et al.,**

    *Respondents*.

**ORDER GRANTING**
**PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is a Petition for Writ of Habeas Corpus (ECF No. 1) filed pursuant to 28 U.S.C. § 2241 and Petitioner's Motion for Temporary Restraining Order or, in the alternative, for Preliminary Injunction (ECF No. 4). Respondents (often referred to as "the Government") have filed a joint response (ECF No. 7) to both filings. Petitioner has filed no reply. The petition and motion are ready for ruling. After reviewing the briefing, provided evidence, and applicable law, the Court grants the petition for the reasons below. Consequently, the Court moots the motion.

## I. BACKGROUND

Petitioner is a 26-year-old citizen of El Salvador who married a United States citizen and has a pending Petition for Alien Relative, Form I-130. He arrived in the United States in 2013 seeking protection from persecution and harm in El Salvador. On or about May 8, 2013, he along with his mother and three siblings applied for admission to enter the United States without proper documentation. They were released on their own recognizance. The next day, he was issued a Notice to Appear ("NTA") charging him as inadmissible under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") for being a noncitizen without valid entry documents.

On January 30, 2023, an immigration judge ("IJ") ordered him removed from the United

States and granted him withholding of removal and protection under the Convention Against Torture ("CAT"), recognizing that he faces clear probability of torture if returned to El Salvador. As a result, while he may not be removed to El Salvador, 8 U.S.C. § 1231(b)(3), he can be removed to a third country. *Johnson v. Guzman Chavez*, 594 U.S. 523, 531–32 (2021).

On November 13, 2024, ICE issued Petitioner an Order of Supervision. Nothing suggests that he has failed to comply with that order. He has been held in custody of the United States Immigration and Customs Enforcement ("ICE") since October 21, 2025, at the South Texas ICE Processing Center in Pearsall, Texas. On that date, ICE issued and served on Petitioner a Warrant of Removal/Deportation (Form I-205) and a Warning to Alien Ordered Removed or Deported (Form I-294). The Government uses Form I-205 to record a noncitizen's departure with the form containing "a photograph of the alien, the alien's fingerprint and signature, and the signature of an immigration official indicating that he or she witnessed the alien depart from the United States." *United States v. Becerra-Valadez*, 448 F. App'x 457, 459 (5th Cir. 2011) (per curiam). "Form I–294, is a letter to [the noncitizen] in his native language, warning him of the penalties for illegal reentry after deportation." *United States v. Quezada*, 754 F.2d 1190, 1191 (5th Cir. 1985).

On November 17, 2025, Petitioner filed the instant petition for writ of habeas corpus in which he asserts that his detention violates 8 U.S.C. § 1231(a)(6) of the INA as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). He further asserts claims under the Fifth Amendment and the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A).

The next day, Petitioner refused to sign Form I-205 and filed his motion for temporary restraining order. On November 19, 2025, ICE issued and served additional forms and revoked Petitioner's Order of Supervision "because it was determined that he could be expeditiously removed from the United States pursuant to his outstanding removal order." That same day,

2

Petitioner refused to sign a Notice of Removal to Mexico.

On November 25, 2025, the Government filed their response to the petition. They argue that (1) Petitioner's detention is lawful under § 1231(a), (2) his *Zadvydas* claim is premature because there is no good reason to belief that his removal is unlikely in the reasonably foreseeable future, and (3) it has afforded Petitioner procedural due process. Petitioner had seven days in which to file a reply and has not done so.

## II. LEGAL STANDARD

Habeas petitioners must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). They "bear[] the burden of proving that [they are] being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [this] burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). Courts "considering a habeas petition must 'determine the facts and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

## III. ANALYSIS[1]

Petitioner primarily argues that he is entitled to relief because his detention is illegal under *Zadvydas v. Davis*, 533 U.S. 678 (2001) in that his removal is not reasonably foreseeable. Respondents argue that Petitioner's detention is lawful under 8 U.S.C. § 1231(a)(6) and that Petitioner

---

[1] In its analysis of the facts, issues, and arguments presented in this case, the Court notes close similarity to that presented in many recent Petitions for Writ of Habeas Corpus filed in the Western District of Texas, and specifically, the San Antonio Division. The Court finds the reasoning in these similar cases persuasive and finds the ultimate determination based upon this reasoning correct. For that reason, and for the sake of expediency, the Court follows these opinions closely. *See, e.g., Puertas-Mendoza v. Bondi*, Case No. 5:25-CV-0890-XR, 2025 WL 3142089 (W.D. Tex. Oct. 22, 2025); *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610 (S.D. Tex. Sept. 26, 2025).

prematurely relies on *Zadvydas* because he has been detained less than six months.

## A. Detention and Reasonable Foreseeability

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682; *accord* 8 U.S.C. § 1231(a)(1). Subject to exceptions within § 1231, subsection (a)(1) mandates that the Government remove the noncitizen during this initial 90-day removal period.

The removal period commences on the latest of three dates, two of which are limited to specific circumstances. *See* 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 241.4(g)(1)(i). For example, the date of a reviewing court's final order may provide the latest date when "the removal order is judicially reviewed and if a court orders a stay of the removal." *See* 8 U.S.C. § 1231(a)(1)(B)(ii). Or the date the noncitizen "is released from detention or confinement" may provide the latest date when the noncitizen "is detained or confined (except under an immigration process)." *Id*. § 1231(a)(1)(B)(iii). If neither of those circumstances provide the latest date, then the period commences on the "date the order of removal becomes administratively final." *Id*. § 1231(a)(1)(B)(i).

The statute, however, also provides for an extension of the initial 90-day period in some circumstances. *Id*. § 1231(a)(1)(C). More specifically:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

*Id*.; *accord* 8 C.F.R. § 241.4(g)(1)(ii). Furthermore, certain noncitizens "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6). Subsection (a)(6) applies to noncitizens who are (i) inadmissible under 8

U.S.C. § 1182, (ii) "removable as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy"; or (iii) have been determined "to be a risk to the community or unlikely to comply with the order of removal." *Zadvydas*, 533 U.S. at 682 (cleaned up).

While § 1231(a) provides authority in some situations to detain a noncitizen beyond the 90-day removal period for as long as is "reasonably necessary to secure removal," the Supreme Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. Furthermore, the Supreme Court recognized that six months is a "presumptively reasonable period of detention." *Id*. at 701. This six-month period includes the 90-day removal period. *See id*.; *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *5–6 (D. Md. Sept. 8, 2025) ("Where the *Zadvydas* Court referenced the 90-day statutory removal period in its discussion of the six-month period, it is clear that the six months includes the original 90-day period of detention, plus an additional 90 days."). "But the Supreme Court has held that a noncitizen may not, consistent with the Due Process Clause, be detained indefinitely." *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610, at *2 (S.D. Tex. Sept. 26, 2025) (citing *Zadvydas*, 533 U.S. at 697). And *Zadvydas* does not "permit the Government to indefinitely detain a noncitizen by the simple expedient of releasing and then re-detaining him in a series of 'presumptively constitutional' six-month increments." *Id*. at *9.

**B. Prematurity**

Respondents argue that Petitioner's reliance on *Zadvydas* is premature because he has been detained less than six months. But this does not preclude detainees from challenging their detention on grounds that their removal is not reasonably foreseeable.

5

*Zadvydas* recognized a "presumptively"—not categorically—reasonable period of detention. 533 U.S. at 699; *Villanueva*, 2025 WL 2774610, at *10 ("[T]he presumption of constitutionality during that six-month period is rebuttable."); *Zavvar*, 2025 WL 2592543, at *5–6 (collecting cases). It did so merely to "guide" lower court determinations of whether removal is reasonably foreseeable. *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397 (D.N.J. June 24, 2025) (quoting *Zadvydas*, 533 at 700–01). And *Zadvydas* unequivocally held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." 533 U.S. at 699.

"Some courts have held that until the six-month *Zadvydas* period concludes, detention is *conclusively* reasonable—in other words, that during that period courts are precluded from inquiring at all into whether removal is reasonably foreseeable." *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 374 (D. Md. Aug. 11, 2025) (collecting cases); *see also Chance v. Napolitano*, 453 F. App'x 535, 536 (5th Cir. 2011) (per curiam) (non-precedential opinion affirming a district court's finding that a challenge to post-removal detention was premature where *Zadvydas*'s six-month period had not passed); *Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011) (per curiam) (same). But, again, *Zadvydas*'s creation of a *presumption* and the case's actual rule—"if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute"—command against that understanding. *See Zadvydas*, 533 U.S. at 699–700. "Even within the presumptively constitutional detention period, whether a noncitizen's detention is constitutional hinges on whether his removal from the United States is reasonably likely in the foreseeable future, not on how long the noncitizen has been detained." *Villanueva*, 2025 WL 2774610, at *10.

**C. Establishing Right to Relief**

That said, a detained person who brings a *Zadvydas* claim before the presumptively reasonable six-month period has run will have a harder time establishing a right to relief. To make out a *Zadvydas* claim after the six months have run, a detained noncitizen need only "provide[]

6

good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. If they do so, "the Government must respond with evidence sufficient to rebut that showing." *Id*.

But before the six-month period has run, a Petitioner must do something more. *See id*. "In practical terms, before the six-month period elapses, the government bears no burden to justify detention, and the petitioner must claim and prove, that his removal is not reasonably foreseeable." *Munoz-Saucedo*, 789 F. Supp. 3d at 397. This means that petitioners must claim and prove "that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701 (recognizing that a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future"); *Cruz Medina*, 794 F. Supp. 3d at 379 (recognizing that, after the presumptively reasonable period of detention, petitioners "need not *prove* that 'there is no significant likelihood of removal in the reasonably foreseeable future,' but rather must articulate a 'good reason to *believe*' that removal is unlikely in the reasonable foreseeable future").

**D. Commencement of Presumptively Reasonable Six-Month Period**

To determine the relative burdens and what must be shown to obtain habeas relief, courts consider whether the six-month period of presumptively reasonable detention has elapsed or whether Petitioner remains within that period of detention. Respondents argue that Petitioner has only been detained since October 21, 2025, and thus remains within the period of detention that is presumptively reasonable. But that argument does not consider whether the six-month period may have commenced when Petitioner's order of removal became administratively final—the latest date the 90-day removal period could have commenced on the facts of this case—following his order of removal on January 30, 2023, and expired before Petitioner's current detention.

Respondents essentially argue that the six-month period does not commence until the

Petitioner is actually confined. If they are correct, then Petitioner must satisfy the more stringent standard of proving that there is no significant likelihood of removal in the reasonably foreseeable future, rather than the less arduous standard of providing a "good reason to believe" that removal is not foreseeable.

*Zadvydas* is not clear on this point. The petitioners there were not released after or during their removal period. 533 U.S. at 684–86. And *Zadvydas* spoke of "continued" detention, which could refer to detention "continu[ing]" without release from the removal period. *E.g.*, *id*. at 699 (holding that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute"). But *Zadvydas* "does not state whether the removal period, or the additional 90 days, counts toward the six months only when the noncitizen is actually detained." *Zavvar*, 2025 WL 2592543, at *4.

While *Zadvydas* may suggest "that only time in detention counts toward" the six-month period, it did so in the specific situation where the "noncitizen was continuously detained from the issuance of the removal order while efforts to execute the removal were ongoing." *Id*. That differs materially from when the "noncitizen was not detained upon issuance of the removal order," remained on release for significant time, and "then was subjected to post-removal order detention for the first time." *Id*. Such "distinction is significant because *Zadvydas* appears to have sought to balance the length of time a noncitizen would be held in detention against the need to afford the Government some time immediately following the issuance of the removal order to make and executed arrangements for removal." *Id*. Considering that

> some if not most of those arrangements, such as securing approval from a foreign country to remove an individual to that nation, can likely be pursued even while the noncitizen is on release, that balance may well differ in circumstances where, before the period of detention began, the Government had a period of time—indeed, in this case, over [two] years—to make the arrangements for removal.

*Id*. These points might suggest the presumptively reasonable "six-month period runs continuously

8

from the beginning of the removal period, even if the noncitizen is not detained throughout that period." *Id*.

On the other hand, *Zadvydas* was, at base, about ensuring people are not *confined* for an unreasonable period. *See* 533 U.S. at 682, 699–700. It speaks in terms of post-removal *confinement*, *e.g.*, *id.* at 701 (noting "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink"), and contrasted "detention" with "releas[ing]" noncitizens "under supervision," *id.* at 683 (noting "as the post-removal-period statute provides, the Government 'may' continue to detain an alien who still remains here or release that alien under supervision"). Further, because detention's basic purpose in this context is to ensure one's presence at the time of removal, limiting the presumption of reasonableness to the six months immediately following the removal period might undermine "necessary Executive leeway" to determine when to begin the removal process. *See id.* at 700–01.

Given these competing arguments, it is unclear whether *Zadvydas*'s six-month period runs continually from the beginning of the removal period or only when the challenging party is physically detained. But the Court need not decide that issue because Petitioner is entitled to relief under either standard.

E. Application

Through the circumstances of his detention and the undisputed facts, Petitioner has proven there is no significant likelihood of his removal in the foreseeable future. The record is sparse from Petitioner's entry into the United States as a minor in May 2013 through January 30, 2023, when an IJ ordered him removed from the United States. But on that same date, the IJ granted Petitioner a withholding of removal under 8 U.S.C.§ 1231(b)(3)(A), thereby providing him protection under CAT and precluding removal to his country of origin, El Salvador. The grant of such a withholding

of removal "substantially increases the difficulty of removing him." *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025).

Until November 13, 2024, Petitioner was neither removed nor subject to an Order of Supervision. On that date, ICE made Petitioner's release subject to such an order. Implicit in such a decision is a finding that Petitioner "was nonviolent and would remain so if released, that he was not likely to pose a threat to the community if released, that he was not likely to violate the conditions of his release, and that he did not pose a flight risk." *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610, at *1 (S.D. Tex. Sept. 26, 2025) (citing 8 C.F.R. §§ 241.4(d)(1) and (e)). Release under an Order of Supervision of a noncitizen who has been ordered removed invokes "detailed regulations concerning when and how that Order of Supervision may be revoked." *Id*. at *2 (citing 8 C.F.R. § 241.4(*l*)). While an "Order of Supervision may be revoked if the noncitizen violates any of its conditions," or "when it is appropriate to enforce a removal order or when "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate," the Government must notify the noncitizen "of the reasons for revocation of his or her release" and afford the noncitizen "a prompt initial informal interview to allow the noncitizen an opportunity to respond to and contest the reasons for revocation." *Id*. (citing regulations).

Petitioner remained released on that Order of Supervision through October 21, 2025, when he reported to the San Antonio ICE Office as his supervision order required. At that point, ICE detained him even though it did not revoke the supervision order until November 19, 2025. Respondents state that on that date they had determined he could be expeditiously removed from the United States pursuant to his outstanding removal order. They provided Petitioner with a Notice of Removal to Mexico, which Petitioner refused to sign. At the time of Respondents' response,

Petitioner remained pending approval for removal to Mexico.

Unless the Government returns "to the immigration court to seek an order lifting the order for a withhold of removal," it cannot remove Petitioner to El Salvador. *See Villanueva*, 2025 WL 2774610, at *10 (citing 8 C.F.R. § 1208.24(f)). The Government has not initiated such proceedings, and its submitted declaration does not state that any such proceedings are anticipated. Further, the declaration demonstrates that following Petitioner's January 30, 2023 order of removal, the Government took no efforts to remove him until after taking him into custody on October 21, 2025. And it did not revoke his release on bond until November 19, 2025, when it made a determination that it could expeditiously remove him from the United States pursuant to his outstanding removal order. Despite that purported determination, Petitioner still awaits pending approval for removal to Mexico, a country to which he has declined to sign a notice for removal. The Government's declaration contains insufficient information to find "that circumstances have changed to the point that [Petitioner's] removal is now reasonably foreseeable when it was not before." *Id*.

Additionally, "any efforts to remove [Petitioner] to a third country would likely be delayed by proceedings contesting his removal to the third country . . . identified." *Id*. When a petitioner "likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings," the circumstances "further demonstrate[] that removal is not likely in the reasonably foreseeable future." *Zavvar*, 2025 WL 2592543, at *8. Even when ICE has "identified a third country," noncitizens like Petitioner "would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings." *Munoz-Saucedo*, 789 F. Supp. 3d at 399 (cleaned up).

These factors all impact the propriety of continued detention. Notably, ICE did not commence Petitioner's current detention because it had located a country willing to accept him. ICE

11

detained him without any explanation, without a removal plan, and without revoking his order of supervision. It did not revoke the supervision order until almost a month later when it then stated that it had been determined that he could be expeditiously removed from the United States pursuant to his outstanding removal order. But that determination remains unrealized. And there was no such determination when ICE commenced Petitioner's detention. The Government cannot cure the wrongful commencement of detention through after-the-fact determinations of potential expeditious removal. This is especially true when there has been no stated progress on such removal during the Petitioner's continued detention, which now approaches its second month.

When there has been a long period of unsupervised release under CAT; a long period of time between an issued supervision order (in this case more than two years); no removal plan in place at the commencement of detention; an initial lack of explanation for detention, an unrealized, after-the-fact purported determination that the Government can expeditiously remove the petitioner; and no immigration proceedings concerning removal to a third country, the circumstances demonstrate that there is no substantial likelihood that Petitioner's removal is reasonably foreseeable. *See Puertas-Mendoza v. Bondi*, Case No. 5:25-CV-0890-XR, 2025 WL 3142089, at *2–4 (W.D. Tex. Oct. 22, 2025) (granting habeas petition on same grounds under substantially similar factual circumstances); *Villanueva*, 2025 WL 2774610, at *10 (granting habeas petition based on *Zadvydas* when detainee had withholding of removal, the Government had neither initiated proceedings to lift the order to withhold removal nor removed him for eight years following his order of removal, and there was no evidence that circumstances had changed to make removal reasonably foreseeable).

Under the circumstances of this case, the Court concludes that habeas relief is proper and *Zadvydas* requires Petitioner's release from his unlawful detention. The Court finds no need to

address any other claim or challenge. And, while Petitioner requests attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), the Fifth Circuit has held that recovery of attorney fees are not available in habeas corpus proceedings. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023). The Court thus denies the request for fees.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus (ECF No. 1). Given this ruling, the Court **MOOTS** Petitioner's Motion for Temporary Restraining Order or, in the alternative, for Preliminary Injunction (ECF No. 4). It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Enoc Isaac Marquez-Amaya from custody, under appropriate conditions of release, to a public place by no later than 12:00 p.m. on December 16, 2025.

2. Respondents must **NOTIFY** Petitioner's counsel of the exact location and exact time of his release as soon as practicable and no less than two hours before his release.

3. Any possible or anticipated removal or transfer of Petitioner under this present detention is **PROHIBITED**.

4. The parties shall **FILE** a Joint Status report no later than 6:00 p.m. December 16, 2025, confirming that Petitioner has been released.

A final judgment will be issued separately.

**IT IS SO ORDERED this 15th day of December 2025.**

JASON PULLIAM
UNITED STATES DISTRICT JUDGE